UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

LANCE WICKNER,                                              Civil No. 11-3448 (DWF/JJK)

        Plaintiff,

v.                                                                              **REPORT AND
RECOMMENDATION**

JENNY COLLELO, and
Dr. MELISSA HAGEN,

        Defendants.
_____

        This matter is before the undersigned United States Magistrate Judge on Plaintiff's application for leave to proceed in forma pauperis, ("IFP"), as permitted by 28 U.S.C. § 1915(a).  (Docket No. 2.)  The matter has been referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court will recommend that Plaintiff's IFP application be denied, and that this action be summarily dismissed.

**I.   BACKGROUND**

        Plaintiff is a civilly committed detainee at the Minnesota Sex Offender Program, ("MSOP"), in Moose Lake, Minnesota.  He is attempting to sue two MSOP employees – Jenny Collelo, who is identified as "a security counselor" at MSOP, and Dr. Melissa Hagen, who is identified as "a clinical counselor."  (Complaint, [Docket No. 1], p. 1, ¶s 2-4.)

        Plaintiff alleges that on October 17, 2011, he "climbed a nuisance fence at MSOP" and "refused to come down."  (Id., p. 2, ¶ 6.)  He allegedly climbed the fence not to escape from MSOP, but "to protest clinical staff not giving him his photographs and to

staff misuse of staff directives." (Id.) MSOP employees used "chemical irritants" to remove Plaintiff from the fence. (Id., ¶ 7.)

Shortly after Plaintiff was removed from the fence, Defendant Hagen allegedly --

> "put the plaintiff on administrative restriction status (here after ARS) and fabricated a statement to justify placing the plaintiff on ARS and having him investigated for criminal charges to send him back to prison for attempted escape."

(Id., ¶ 10.)

The following day, (October 18, 2011), Defendant Collelo allegedly –

> "lied and fabricated a Behavior Expectation Report (here after BER) to get the plaintiff charged with attempted escape, stating in the BER that the plaintiff climbed the fence 'in an attempted escape.'"

(Id., ¶ 12.)

Based on these bare allegations alone, Plaintiff is attempting to sue Defendants under 42 U.S.C. § 1983 for allegedly violating his federal constitutional rights. Plaintiff claims that Defendants violated his right to due process "in fabricating reports to try and get plaintiff charged with escape and sent back to prison." (Id., ¶ 14.) Plaintiff is seeking a judgment in the amount of $100,000.00 to compensate him for alleged "emotional injury." He is also seeking punitive damages in the amount of $1,000,000.00. (Id., p. 3.)

## II. DISCUSSION

A plaintiff's IFP application will be denied and his action will be dismissed when he files a complaint that fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996)(per curiam).

To state an actionable claim for relief, a plaintiff must allege a set of specific

historical facts, which, if proven true, would entitle the plaintiff to some redress against the named defendant(s) under some cognizable legal theory.  See Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).  The facts supporting a plaintiff's claims must be clearly alleged.  Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint."  Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

In this case, Plaintiff is attempting to sue the named Defendants under 42 U.S.C. § 1983, for allegedly violating his federal constitutional rights.  To state an actionable § 1983 civil rights claim, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  A civil rights claimant must plead facts showing each named defendant's personal involvement in alleged constitutional wrongdoing.  Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999).  See also Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim").  Thus, in order to state an actionable civil rights claim against a defendant, a complaint must set forth specific factual allegations showing what that particular defendant allegedly

did, or failed to do, while acting under color of state law, that purportedly violated the plaintiff's federal constitutional rights.  As explained by the Supreme Court, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S.Ct. at 1948 (emphasis added).

In this case, Plaintiff claims that Defendants Collelo and Hagen violated his constitutional right to due process, by allegedly fabricating charges that he attempted to escape from MSOP.  Defendant Hagen allegedly "fabricated a statement" that caused Plaintiff to be put on "administrative review status," and Defendant Colello allegedly "lied and fabricated a Behavior Expectation Report."  There are no allegations showing that Plaintiff suffered any specific adverse consequences as a result of Defendants' alleged actions.

Because Plaintiff is in custody, but not currently serving a prison sentence for a criminal conviction, his status is much like that of a pre-trial detainee who is in custody, but has not yet been convicted of any crime.   Therefore, Plaintiff's due process rights are comparable to those of a pre-trial detainee.  See Youngberg v. Romeo, 457 U.S. 307, 320 (1982) (recognizing similarity between due process rights of civilly committed detainees and those of pre-trial  detainees); Serna v. Goodno, 567 F.3d 944, 949 (8th Cir.) (recognizing "analogy between pretrial detainees and civilly committed persons as two groups that could be subjected to liberty restrictions 'reasonably related to legitimate government objectives and not tantamount to punishment'") (quoting Youngberg, 457 U.S. at 320-21), cert. denied, 130 S.Ct. 465 (2009).[1]

---

[1]   In at least two prior cases decided in this District, courts have found that the due

In <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979), the Supreme Court held that pre-trial detainees cannot be "punished" without being afforded the procedural protections of due process. <u>Id</u>. at 535 ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). This Court will assume (at least for now) that Plaintiff, as a civilly committed detainee, also has a constitutionally protected liberty interest in being free from punishment without due process. Simply put, Plaintiff cannot be "punished" without being afforded the procedural protections of due process.

However, the Supreme Court also held in <u>Bell v. Wolfish</u> that not every unwelcome event that befalls a pre-trial detainee can be considered a form of "punishment" that implicates due process concerns. In the words of the Court, "'[t]here is, of course, a <u>de minimis</u> level of imposition with which the Constitution is not concerned.'" <u>Id</u>. at 539, n. 21, quoting <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 (1977). The same must be true for due process claims brought by civilly committed detainees such as Plaintiff.

Here, the "punishment" suffered by Plaintiff, as described in his complaint, does not surpass the "<u>de minimis</u>" threshold. Indeed, Plaintiff's complaint does not describe <u>any</u> punishment actually imposed by either of the two named Defendants. As noted above, Plaintiff alleges only that both Defendants authored a statement or report, and that Defendant Hagen put him on "administrative restriction status." The complaint does not describe any actual adverse consequences resulting from any of Defendants' alleged

---

process rights of civilly committed detainees are comparable to those of pre-trial detainees. <u>DeVillion v. Milczark</u>, No. 01-617 (DWF/SRN); <u>Becker v. Harry</u>, No. 01-706 (JEL/JGL).

actions.  There certainly are no allegations of any consequences that could be considered "punishment" of more than a de minimis nature.[2]

Plaintiff apparently believes that he might be punished sometime in the future, because the reports allegedly written by Defendants might someday cause state criminal charges to be filed against him.  As of now, however, those concerns appear to be pure speculation.  Plaintiff has not alleged that any state criminal charges actually have been filed against him.  Furthermore, the mere filing of state criminal charges could not give rise to an actionable due process claim, because if any such charges were filed, Plaintiff presumably would not be deprived of any constitutionally protected liberty interest without being afforded the full measure of due process protections prescribed by Minnesota state law and the federal Constitution.

In sum, Plaintiff has not alleged any facts showing that he has suffered any actual "punishment" that is constitutionally significant.  Therefore, he has failed to plead an

---

[2]   The inadequacy of Plaintiff's due process claim can be readily understood by comparing this case with Smith v. Copeland, 87 F.3d 265 (8th Cir. 1996).  Smith was a § 1983 action brought by a pre-trial detainee who was seeking relief for alleged violations of his right to due process.  The plaintiff, Smith, alleged that he was placed in "segregated confinement" for four days.  He further alleged that the toilet in his isolation cell overflowed, and "that he was 'made to endure the stench of [his] own feces and urine'" during the four days that he was in segregated confinement.  Id. at 268.  Even though Smith allegedly endured four days of complete isolation, during which he lived in "raw sewage," the Eighth Circuit still found his due process claim to be inadequate, as a matter of law.  The Court held that even the "'raw sewage' allegation" amounted to no more than "a de minimis imposition" that did not "implicate constitutional concerns."  Id.

Needless to say, Plaintiff has not described any "punishment" that approaches the circumstances described in Smith.  Indeed, Plaintiff has not described any untoward circumstances at all.  If the deprivations described in Smith's complaint amounted to no more than a "de minimis imposition," the same must be true of the deprivations described in Plaintiff's current complaint.

actionable § 1983 due process claim.  Because Plaintiff has not stated an actionable claim for relief, the Court will recommend that Plaintiff's complaint be dismissed, and that his IFP application be denied, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## III. RECOMMENDATION

Based upon the above, and upon all the records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's application to proceed in forma pauperis, (Docket No. 2), be **DENIED**; and

2. This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Dated:   December 14, 2011

*s/ Jeffrey J. Keyes*<br>JEFFREY J. KEYES<br>United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 30, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.